UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

Sharon Syverson,　　　　　　　　　　Case No. 21-26184-beh

　　　　　Debtor.　　　　　　　　　　Chapter 13

**DECISION GRANTING WILMINGTON SAVINGS FUND SOCIETY'S MOTIONS FOR *IN REM* RELIEF/ABANDONMENT/CO-DEBTOR RELIEF**

The creditor, Wilmington Savings Fund Society ("Wilmington"), seeks an extraordinary form of relief—lifting of the automatic stay as to its secured property and *in rem* relief—pursuant to 11 U.S.C. § 362(d)(4), precluding the automatic stay from applying to the homestead property in any bankruptcy case filed within the next two years. For the reasons identified at the hearing on this motion, and supplemented by the decision below, the Court grants the relief requested.

**CASE BACKGROUND**

The debtor filed this, her sixth Chapter 13 case, on December 3, 2021. ECF No. 1. Each of her cases has resulted in dismissal and not one has seen a confirmed plan. The history of the debtor's cases reveals a pattern: continued failure to fulfill her obligations under the Bankruptcy Code and repeated avoidance of court orders.[1] Her first case was dismissed for failure to make payments. Case No. 16-24354, ECF No. 58. In that case, the predecessor of Wilmington Savings Fund Society filed a motion for relief from stay which the Court resolved by requiring the debtor to file an amended plan addressing the lender's claim. Case No. 16-24354, ECF No. 36. Wilmington holds a security

---

[1] The first three cases the debtor filed included her husband, David Syverson, as a joint debtor. Ms. Syverson stated in correspondence to the Court in this case that Mr. Syverson is now deceased. ECF No. 11.

interest in the debtor's principal residence, located at 234 E. Fairy Chasm Rd in Bayside, WI 53217.[2] The debtor never filed an amended plan to comply with the court's order. Her second case, filed fourteen months after her first case was dismissed, was dismissed for failure to timely file her plan, and no schedules were filed, all despite the Court granting debtor's request for an extension of time.[3] Case No. 17-26929, ECF Nos. 10, 12. Her third case, filed three months after her second case was dismissed (also including a motion to extend time to file schedules), was dismissed for failure to comply with the Court's order to file an amended plan or successfully participate in mortgage mediation.[4] Case No. 17-30585, ECF Nos. 11, 76. In her fourth case, filed five months after her third case was dismissed, Wilmington filed an unopposed motion for abandonment and relief from stay concerning debtor's homestead.[5] The Court entered an order lifting the stay on November 15, 2019 (Case No. 19-26268, ECF No. 34), but after a hearing on debtor's request for reconsideration, vacated that order and gave debtor a deadline to file an amended plan and supporting budget showing her ability to pay Wilmington's claim. Case No. 19-26868, ECF No. 50. The Court denied her request for an extension of time to make those filings. Case No. 19-26268, ECF No. 53. Ultimately, debtor did not meet those conditions, so on March 12, 2020, the Court dismissed her case. Case No. 19-26268, ECF No. 68. Her last case, filed six months after her fourth case was dismissed, was dismissed for failure to attend her § 341 meeting of creditors.[6] Case No. 20-26169, ECF No. 29. That case also resulted in a 180-day bar to future bankruptcy filings, a restriction sought by her mortgage

---

[2] The prepetition arrearage owed to Wilmington's predecessor at the time debtor filed her first case was $38,359.87. Case No. 16-24354, Claim No. 5-1.

[3] The prepetition arrearage owed to Wilmington's predecessor at the time debtor filed her second case is not available because the case was dismissed before any creditors filed their proofs of claim. Case No. 17-26929.

[4] The prepetition arrearage owed to Wilmington's predecessor at the time debtor filed her third case had increased to $69,604.04. Case No. 17-30585, Claim No. 5-1.

[5] The prepetition arrearage owed to Wilmington at the time debtor filed her fourth case had increased to $108,397.76. Case No. 19-26268, Claim No. 2-1.

[6] The prepetition arrearage owed to Wilmington at the time debtor filed her fifth case is not available because the case was dismissed before Wilmington had filed its proof of claim. Case No. 20-26169.

creditor, Wilmington. Case No. 20-26169, ECF No. 34. The present case was filed less than five months after the bar period ended.[7]

Wilmington now moves for *in rem* relief under 11 U.S.C. § 362(d)(4), abandonment under 11 U.S.C. § 554(b), and co-debtor relief under 11. U.S.C. § 1301. Wilmington argues the debtor's repeated filings and dismissals constitute abuse of the Code in a scheme to hinder or delay its efforts to foreclose on the Bayside property. In its brief supporting the motion, Wilmington details much of the aforementioned chronology of Ms. Syverson's bankruptcy filings and the corresponding prejudice it has sustained, culminating in a pre-petition mortgage arrearage of $159,887.17 from a contractual due date of August 1, 2014. ECF No. 15, at 4.[8] Wilmington attached documents showing that its efforts—and those of its predecessors in interest, U.S. Bank and Wells Fargo—to foreclose on the property began in 2015. *Id.* at 32. Wilmington also highlights its prior motions for relief from the automatic stay in the 2016 case and 2019 cases and having obtained a bar against the debtor refiling a bankruptcy case for 180 days upon dismissal of the 2020 case. *Id.* at 4, 6. The debtor did not dispute her history of non-payment on the mortgage.

The Court held a hearing on Wilmington's motions on January 25, 2022. The debtor, counsel for Wilmington, and the Chapter 13 trustee appeared. The debtor's son Paul Bruno also attended.[9] Counsel for Wilmington argued that debtor's case-filing history exemplifies the precise situation § 362(d)(4) was enacted to address, asserting that debtor's repeated filings were submitted with

---

[7] The prepetition arrearage owed to Wilmington at the time debtor filed this, her sixth case, had increased to $158,830.62. Claim No. 2-1.

[8] The amount of prepetition arrearage noted in the motion is slightly higher than the amount listed by the creditor on Claim No. 2-1. The difference is immaterial for purposes of this analysis.

[9] Mr. Bruno wanted to argue on behalf of his mother at the hearing, but the Court denied him that opportunity because he is not a lawyer. *See* 28 U.S.C. § 2854; *see also Lewis v. Lenc-Smith Mfg. Co.,* 754 F.2d 829, 830 (7th Cir. 1986). His status as financial power of attorney for the debtor does not convert his status to legal counsel. The Court did permit Mr. Bruno to briefly address statements about his own bankruptcy cases raised by Wilmington. The debtor herself coherently argued her position in response to the creditor's motion, even if the Court ultimately disagreed with it.

an intent to delay, hinder, and defraud his client. Counsel added that both debtor and her son have a history of such filings, followed by rapid dismissals. In response, the debtor argued that Wilmington and its attorneys have delayed or ignored her efforts to refinance her mortgage debt with another lender over the course of the last six years and she asked for a continuance to allow her application for refinancing to be processed. The Chapter 13 trustee did not take a position on the motion, but added that notwithstanding the substantial mortgage arrears, the debtor's proposed plan is not feasible because the proofs of claim submitted by taxing authorities would require the debtor to double her plan payment. At the conclusion of the hearing, the Court granted Wilmington's motion, finding that the debtor's conduct—chiefly, not meeting her obligations under the Code in serial cases while allowing her mortgage arrearage to grow—constituted abuse warranting *in rem* relief. The Court issued an order in accordance with this oral ruling. ECF No. 40.[10] This decision supplements that ruling.

## ANALYSIS

There are times where it becomes apparent that a debtor is using the bankruptcy process not to reorganize his or her debt and treat creditors fairly, but solely to prevent secured creditors from exercising their rights. For those rare instances, 11 U.S.C. § 362(d)(4) allows particularized relief from the automatic stay of an act against real property, for a period of two years, upon a showing that repeated filings affected such property and were "part of a scheme to delay, hinder, or defraud creditors . . . ." 11 U.S.C. § 362(d)(4). This subsection affords *in rem* relief because it is directed at the real property that is the subject of the motion. ". . . [A]n order entered under paragraph (4) shall be

---

[10] The creditor's motion is not a model of clarity. The only legal authority cited is that authorizing *in rem* relief, 11 U.S.C. § 362(d)(4). The motion variously refers to the two-year *in rem* lift of stay against the debtor's residence, but also seems to describe a bar to filing new cases, without citing authority for such a sanction. At the hearing, the court granted the motion and stated it would issue a written decision more fully describing the legal authority for *in rem* relief under § 362(d)(4). Accordingly, the Court construes the motion to seek only a lift of stay and a two-year period of *in rem* relief against the subject property, along with abandonment and co-debtor relief.

binding in any other case under this title purporting to affect such real property filed not later than 2 years after the date of entry of such order by the court . . . ." *Id.*

Recently, another bankruptcy court granted a mortgagee's motion for *in rem* relief where "[t]he number and timing of the debtor's Chapter 13 petitions compels the conclusion that the [instant] petition was part of a scheme as that term is used in § 362(d)(4)." *In re Mendiola,* 573 B.R. 758, 763 (Bankr. E.D. Wis. 2017). That court found: "Along with repeatedly defaulting on the terms of his mortgage, the debtor has failed to make plan payments for a sustained period in any of his five previous cases." *Id.* at 766.

The *Mendiola* court granted *in rem* relief to the mortgage creditor where the debtor's sixth bankruptcy case was as unsuccessful in generating plan payments as his previous five cases had been, and he had not paid his mortgage in six years. 573 B.R. at 760. The mortgagee argued that being forced to halt and then restart foreclosure proceedings with each subsequent filing and dismissal was cause to impose the extraordinary stay relief of § 362(d)(4). *Id.* at 762. The court reasoned that *in rem* relief "empowers the court to provide additional relief in circumstances where an ordinary order granting relief from the automatic stay will be ineffective to protect the secured creditor's rights." *Id.* (*citing* 9B Am. Jur. 2d *Bankruptcy* § 1849 (2017)). The court identified the limited circumstances under which § 362(d)(4) relief may be sought: (1) the moving creditor must have an interest in real property; (2) the debtor's bankruptcy case is "part of a scheme to delay, hinder or defraud creditors"; and (3) the scheme must result from either subsequent transfer of the property without the creditor's consent or multiple filings that affect the subject property. *Id.* at 763.

Having found the creditor easily satisfied the first and third factors, the *Mendiola* court focused on whether the bank had shown the debtor engaged in a scheme to delay, hinder or defraud it. *Id.* The debtor argued that his repeated dismissals were honest mistakes and he lacked an intent to thwart foreclosure

efforts. *Id.* The court disagreed, pointing out that Mendiola's bankruptcy petitions were always filed after the bank had taken some step to foreclose on the home. *Id.* Recognizing that multiple filings are not always indicative of a scheme, the court bolstered its decision with other pertinent facts, such as the relatively short time between debtor's multiple filings and his lack of serious effort toward plan completion. *See also In re of House,* Case No. 17-30434 2018 WL 1505572, at *7, (Bankr. E.D. Wis. March 28, 2018) (explaining that "the bare number of prior bankruptcy cases does not, *ipso facto*, mean a court will conclude that a scheme to delay or hinder exists in a particular case. Instead, courts take a deeper dive, reviewing the reasons for success and failure of a debtor's prior cases, and the debtor's treatment of a particular lender.") (citations omitted).

The facts in *Mendiola* and those apparent from the dockets in Ms. Syverson's cases are strikingly similar. Here, the debtor does not dispute her history of multiple filings or Wilmington's interest in the real property. As for whether her conduct constitutes "a scheme to hinder, delay, or defraud," the cumulative docket evidence substantially supports that conclusion.

With regard to her treatment of the debt to Wilmington, the creditor's proofs of claim in each of the debtor's cases reveal that Ms. Syverson is entering her eighth consecutive year of mortgage default. In other words, the years of *non*payment exceed those in which she made payments. *See* ECF No. 15 at 12, Claim No. 2-1. The short intervals between dismissal of one case and the filing of the next—albeit unsuccessful—case, along with multiple requests to extend the time to file documents, are additional support for the conclusion that debtor did not file these cases with an intent to reorganize and pay her debt to Wilmington, but rather to stall as long as possible.

In addition, the debtor's failure to fulfill the Bankruptcy Code's most basic obligations—including failure to timely file her schedules, failure to timely file a plan, and failure to attend a § 341 meeting—severely undercut any suggestion that debtor has attempted to meet her obligations in bankruptcy

and treat her creditors fairly. Moreover, her failures to comply with court orders requiring her to resume payments to Wilmington (ECF No. 36 in case number 16-24354), and to timely file amended feasible plans (or successfully participate in mortgage modification mediation) support the finding of an intent to hinder. *See* ECF No. 50 in case number 19-26268, and ECF No. 71 in case number 17-30585. And, to the extent Ms. Syverson filed schedules at all in her previous cases, they fail to demonstrate an ability to make plan payments. The negative net monthly income indicated on her Schedule J in case number 19-26268, ECF No. 10 at 32 is a glaring example, as is the Chapter 13 trustee's representation in this case that debtor's plan does not feasibly accommodate the present claims of taxing authorities, even without addressing the substantial debt owed to Wilmington.

In sum, given the seriality of debtor's unsuccessful bankruptcy filings in a relatively short time, her continued nonpayment of her mortgage, and no evidence of other efforts to adequately address this debt, the Court finds the debtor has engaged in a scheme to delay or hinder Wilmington's efforts to protect its interest in the property, and that *in rem* relief under § 362(d)(4) for a period of two years is appropriate.

## CONCLUSION

For the reasons stated on the record at the January 25 hearing, supplemented by those described above, the Court's order dated January 31, 2022 (ECF No. 40), granting *in rem* relief from the automatic stay, abandonment, and co-debtor relief to Wilmington remains fully in effect.

Dated: February 2, 2022

By the Court:

Beth E. Hanan
United States Bankruptcy Judge